IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  12-cv-03165-LTB

MARCO A. HERNANDEZ,

        Plaintiff,

v.

UNITED STATES OF AMERICA, TRANSPORTATION SECURITY ADMINISTRATION,
NELSON PADMIN GUZMAN, VICKY L. MOST, JOHNNY VIDAL,

        Defendants.

_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

      Plaintiff Marco A. Hernandez brings this action against the United States, the

Transportation Security Administration ("TSA"), Nelson Padmin Guzman, Vicky L. Most, and

John Vidal (collectively the "Individual Defendants") based on events occurring as Plaintiff

passed through airport security at Orlando International Airport on February 26, 2008, and

December 13, 2009, and at Denver International Airport on October 9, 2009.  [*See* Doc. # 13].

Plaintiff alleges in each of these instances that he was "subject to harassing interrogation, and

unlawfully detained," which caused plaintiff to "suffer injuries, damages, and losses, including

but not limited to pain and mental anguish, emotional distress, diminished enjoyment of life,

embarrassment and other economic losses."  [Doc. # 13 at ¶¶ 12, 52].  Plaintiff sues the United

States and TSA under the Federal Tort Claims Act 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA"),

for negligence, "false-arrest, assault, battery, false imprisonment, unlawful search, unlawful invasion of privacy, and intentional and negligent infliction of emotional distress," and sues the Individual Defendants for constitutional violations under the Fourth Amendment. [*See* Doc. # 13]. The United States and TSA have moved to dismiss, arguing that Plaintiff's claims are not authorized by the FTCA, that the United States and TSA have not waived immunity, Res Judicata, and that Plaintiff's claims do not state an adequate constitutional violation. [Doc. # 15]. Plaintiff filed a response in opposition to the motion (Doc. # 20), and Defendants filed a reply (Doc. # 21). For the following reasons, Plaintiff's Amended Complaint for Damages (Doc. # 13), is dismissed.

## I. FACTS

Plaintiff filed this action on December 4, 2012, alleging claims against Defendants, the United States, TSA, and the Individual Defendants. The background facts of the case are presented as they appear in Plaintiff's Second Amended Complaint (Doc. # 13) unless otherwise noted.

Plaintiff claims that he was "subject to unlawful detention, harassing, interrogation, embarrassment, and other torts . . .[on] at least" three occasions. [Doc. # 13 ¶ 26]. Plaintiff contends that these actions were "were undertaken because of the race and ethnicity" of Plaintiff. [*Id.* at ¶ 35]. Although Plaintiff alleges there were other instances of harassment, Plaintiff does not provide any factual allegations related to these alleged instances, thus they will not be addressed. [*See id.* at ¶ 34]. In 2008 and 2009, after being involved in a serious car accident which limited Plaintiff's ability to "stand for long periods of time," he traveled between Denver, Colorado, and Orlando, Florida on several occasions. [*Id.* at ¶ 27].

Plaintiff alleges that the first instance of harassment occurred on February 26, 2008, when Plaintiff was traveling from Orlando, Florida to Denver, Colorado. [*Id.*] Upon arriving at the Orlando International Airport, Plaintiff checked in to his flight with United Airlines. [*Id.*] Plaintiff then proceeded to the TSA security checkpoint and, after observing that the regular security inspection line was "extremely long," and because he could not stand for long periods of time, Plaintiff proceeded to the handicap and wheelchair lane. [*Id.* at ¶ 28]. Plaintiff approached Individual Defendant Nelson Padmin Guzman, who was working the handicap and wheelchair access lane, and explained his need to use the entrance. [*Id.*] Individual Defendant Guzman commented that "he did not see anything wrong with [Plaintiff]." [*Id.*] Plaintiff offered to provide medical documentation proving his handicapped status, which Individual Defendant Guzman declined and instead requested Plaintiff's driver's license. [*Id.*] Individual Defendant Guzman then "wrote on [Plaintiff's] boarding pass that a secondary inspection was required . . . [and] stated that [Plaintiff's] driver's license was expired and asked for a second form of identification [d]espite the fact that the license was not expired." [*Id.*] Plaintiff complied with Individual Defendant's request and produced his valid United States passport. [*Id.*] Plaintiff was then permitted to proceeded through the airport screening process, including walking through a metal detector and removing his laptop and all other metal items for x-ray screening. [*Id.*] Upon walking through the metal detector, Plaintiff was greeting by another TSA Security Officer, A. Lipson and a supervisor for secondary inspection who confirmed that Plaintiff's driver's license was not expired. [*Id.*] After a second supervisor was called to the check point, Plaintiff was permitted to proceed through the security checkpoint. [*Id.* at ¶ 29].

The second incident occurred the afternoon of October 9, 2009, at Denver International Airport. [*Id.* at ¶ 31]. On that date, Plaintiff was using post-operation crutches, and as he entered the TSA checkpoint, was asked by a TSA employee whether he could pass through the metal detector without his crutches. [*Id.*] Plaintiff responded that he could not. [*Id.*] Plaintiff proceeded to place his belongings on the belt for x-ray screening, including a 12 oz. bottle of water. [*Id.*] The TSA employee attempted to confiscate the bottle and Plaintiff protested, explaining that the water was necessary in order to take his prescribed medication. [*Id.*] The TSA employee explained that water was not permitted per security policy regarding allowable liquids and gels. [*Id.*] Plaintiff then requested that a supervisor be called, upon arrival another TSA employee insisted that the 12 oz. of water was not permitted. [*Id.*] Plaintiff then "asked to speak with the AFSD Assistant Security Director," and as he waited other TSA employees "became aggressive and [asked Plaintiff] to walk to a private screening room" without his left shoe. [*Id.*] Once in the private screening room, Plaintiff "provided identification identifying himself as a retired federal air marshal." [*Id.* at ¶ 32]. Supervisor, Vicky L. Most, advised the other TSA employees not to provide their names to Plaintiff. [*Id.*] This incident lasted 45 minutes to 1 hour, and Plaintiff missed his flight and was required to return to the airport the following day to travel to Florida. [*Id.*]

The third incident occurred on December 13, 2009, when Plaintiff arrived at the Orlando International Airport wearing a boot cast with several metal belt loops prescribed by his surgeon. [*Id.* at ¶ 33]. At the TSA security checkpoint, Plaintiff proceeded through the metal detector wearing the boot cast, which caused the metal detector to go off. [*Id.*] Plaintiff was then "properly escorted to another area to undergo a secondary screening . . . which consisted of a pat

4

down search as well as a hand-held metal detector. The screening also consisted of a swab test of [Plaintiff's] boot cast." [*Id.*]  After completion of the secondary screening, Individual Defendant Johnny Vidal asked Plaintiff if he could remove his boot cast.  [*Id.*]  Plaintiff "inquired as to Mr. Vidal's request and Mr. Vidal left the area to consult with a supervisor. After consulting with the supervisor Mr. Vidal returned and advised that the supervisor would not permit [Plaintiff] to enter the terminal unless [he] removed his boot cast to allow the screen to visually inspect the boot cast." [*Id.*]  Plaintiff complied with the request and was permitted to leave the screening area.  [*Id.*]

## II. <u>STANDARDS OF REVIEW</u>

### A.    <u>Fed. R. Civ. P. 12(b)(1)</u>

Fed. R. Civ. P. 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Statutes conferring jurisdiction on federal courts are to be strictly construed.  *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  A Fed. R. Civ. P. 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction."  *Groundhog v. Keller*, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction.  *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  Once subject matter jurisdiction is challenged, the plaintiff bears the burden of proving it exists by a preponderance of the evidence.  *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms.  First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the

complaint as true.  *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  Second, if

a party attacks the factual assertions regarding subject-matter jurisdiction, the court may make its

own findings of fact.  *Id.* at 1003.  A court's consideration of evidence outside the pleadings will

not convert the motion to dismiss to a motion for summary judgment under Fed. R. Civ. P. 56.

*Id.* (the "court has wide discretion to allow affidavits, other documents, and a limited evidentiary

hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)"); *see also New Mexicans for*

*Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995).  Where, however, the court

determines that jurisdictional issues raised in rule 12(b)(1) motion are intertwined with the case's

merits, the court should resolve the motion under either rule 12(b)(6) or rule 56.  *See Franklin*

*Sav. Corp. v. United States*, 180 F.3d 1124, 1129-30 (10th Cir. 1999); *Tippet v. United States*,

108 F.3d 1194, 1196 (10th Cir. 1997).

**B.**     **Fed. R. Civ. P. 12(b)(6)**

        Fed. R. Civ. P. 12(b)(6) states that a court may dismiss a complaint for "failure to state a

claim upon which relief can be granted."  To survive a motion to dismiss under Fed. R. Civ. P.

12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to

relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) *(quoting Bell*

*v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)).  "While a [pleading] attacked by a Rule

12(b)(6) motion to dismiss does not need detailed factual allegations . . . a [party's] obligation to

provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 556 (citations

omitted).  "Factual allegations must be enough to raise a right to relief above the speculative

level."  *Id.; see also Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir.

2007).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 129 S.Ct. at 1949 (*quoting Twombly*, 550 at 556).

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must assume the truth of all well-pleaded facts in the complaint and draw all reasonable inferences therefrom in the light most favorable to the plaintiff.  *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007).  However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions.'"  *Khalik v. United Airlines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (*quoting Ashcroft v. Iqbal*, 556 U.S. at 677).

### III. <u>DISCUSSION</u>

Defendants United States and TSA's Motion to Dismiss (Doc. # 15) contends that Plaintiff's Amended Complaint should be dismissed under both Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).  [*See* Doc. # 15].  Defendants first assert that Plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), on the basis that the Court lacks subject matter jurisdiction under both the Federal Torts Claims Act ("FTCA") and the Administrative Procedure Act ("APA"), some of the claims are untimely, and that they have not waived sovereign immunity.  [*See, id.*]  Defendants also assert that Plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), because Plaintiff has failed to state a claim upon which relief can be granted.  [*See, id.*]

A.  **Plaintiff's FTCA Claims**

Plaintiff alleges that Defendants, the United States and TSA, are liable under the FTCA for the alleged torts against Plaintiff by TSA officers.

In order for a suit to proceed against the United States, a waiver of sovereign immunity must exist. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). The FTCA constitutes a partial waiver of the federal government's sovereign immunity, which permits a claimant to sue the United States for the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment" 28 U.S.C. § 2675(a); *United States v. Kubrick*, 444 U.S. 111, 115 n.4, 100 S.Ct 352, 62 L.Ed.2d 259 (1979). "[T]he FTCA makes the United States liable to the same extent as a private individual under like circumstances, under the law of the place where the tort occurred, subject to enumerated exceptions to the immunity waiver." *Levin v. United States*, — U.S. —, —, 133 S.Ct. 1224, 1228, 185 L.Ed.2d 343 (2013) (internal citations and quotation marks omitted). If a tort claim against the United States falls into one of the FTCA's exceptions it is barred by sovereign immunity. *Id.* Courts should not extend the waiver of the United States' sovereign immunity beyond that which Congress intended. *Kubrick*, 444 U.S. at 118. When invoking a waiver, the plaintiff bears the burden to show that an unequivocal waiver of sovereign immunity exists, and that none of the statute's waiver exceptions apply to this particular claim. *See James v. United States*, 970 F.2d 750, 753 (10th Cir. 1992); *see also Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005). If the plaintiff fails to meet this burden, the claims must be dismissed. *See James*, 970 F.2d at 753.

1.      **Claims Against TSA and Individual Defendants Pursuant to the FTCA**

In his complaint Plaintiff alleges claims pursuant to the FTCA against both the United States and TSA.  However, Congress has explicitly provided, that the only proper party in an action under the FTCA is the United States, not the agency nor federal officials or employees. *See* 28 U.S.C. § 2679(a); *see also Smith v. United States*, 561 F.3d 1090 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010); *Cortez v. E.E.O.C.*, 585 F. Supp. 2d 1273, 1284 (D. N.M. 2007); *Romanach v. United States*, 579 F. Supp. 1017, 1018 n. 1 (D. P.R. 1984)(holding that no suit under the FTCA may lie against any agency of the United States *eo nomine*); *Painter v. F.B.I.*, 537 F.Supp. 232, 236 (N.D. Ga. 1982)(holding that "[t]he FBI may not be sued *eo nomine*").  In other words, federal agencies, and federal employees acting with the scope of their employment, are not proper defendants under the FTCA.  To the extent that Plaintiff argues that such claims survive for the Individual Defendants, the same applies.

So, Plaintiff's FTCA claims against the TSA and Individual Defendants are dismissed.

2.      **Claims Against the United States Pursuant to the FTCA**

Plaintiff alleges that the United States is liable for the TSA officers' activities pursuant to the FTCA because these officers were "acting within the scope of their employment as law enforcement officers for the United States of America and its Transportation Security Administration."  [*See* Doc. # 13 ¶ 49].  Specifically, Plaintiff alleges the following torts: negligence, false arrest, assault, battery, false imprisonment, unlawful search, unlawful invasion of privacy, and intentional or negligent infliction of emotional distress under the laws of the State of Colorado and the State of Florida.  [*Id.* at ¶ 48].

### a. Plaintiff's Claims for False Arrest, Assault, Battery, and False Imprisonment

Defendants contend that I lack subject matter jurisdiction over Plaintiff's FTCA claims for the intentional torts of false arrest, false imprisonment, and assault, and battery because they are barred by the FTCA.

At issue here is the FTCA's "intentional tort" exception and the "law enforcement" proviso, both codified at 28 U.S.C. § 2680(h).  The "intentional tort" exception retains the United States' immunity, and thus bars FTCA actions for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."  *Id.*  However, the "law enforcement" proviso in the same subsection provides an exception to the exception that permits certain intentional tort actions, including for assault and battery, against "investigative or law enforcement officers of the United States Government."  *Id.*  The proviso further defines "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.*  Thus, Plaintiff's false arrest, assault, battery, and false imprisonment claims are presumptively barred by the "intentional tort" exception to the FTCA unless the Individual Defendants are "investigative or law enforcement officer[s]" within the meaning of the proviso.

In asserting that Defendant's motion to dismiss Plaintiff's FTCA claims should be denied, Plaintiff first argues that discovery as to the Individual Defendants' official titles should be permitted.  But such discovery is unwarranted where, as here, the facts in Plaintiff's Amended

Complaint (Doc. # 13) make it clear that Individual Defendants Guzman, Vidal, and Most were employed by the TSA as screeners.  [*See* Doc. #s 13, 20].

Plaintiff also contends that the Individual Defendants in this case are "investigative or law enforcement officer[s]" as described in § 2680(h).  [Doc. # 20].  However, Defendants persuasively argue that this is a legal conclusion, so I need not assume its truth.  *See Iqbal*, 556 U.S. at 678; *Dry v. United States*, 235 F.3d 1249, 1257 (10th Cir. 2000).  Instead, Defendants contend that the Individual Defendants do not fall within the scope of the "law enforcement" proviso and that, therefore, the United States has not waived its sovereign immunity with respect to Plaintiff's alleged false arrest, assault, battery, and false imprisonment claims.

I begin my analysis with the statute.  *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002); *Salazar v. Butterball L.L.C.*, 644 F.3d 1130, 1136-37 (10th Cir. 2011) ("As with all statutory interpretation cases, we begin with the language of the statute.").  If the statute has a "plain and unambiguous meaning with regard to the particular dispute in the case and the statutory scheme is coherent and consistent, our inquiry ends." *Salazar*, 644 F.3d at 1137 *(quoting Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)).  Here, the phrase at issue, "investigative or law enforcement officer," is defined within the statute as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."  28 U.S.C. § 2680(h).  The question is whether TSA screeners are "investigative or law enforcement officers" pursuant to § 2680(h).  To make this determination I will first examine the duties and authorization provided TSA screeners.

Deferring the more difficult question of whether screeners may "execute searches," it is clear that screeners do not "seize evidence" or "make arrests for violations of Federal law." Congress gave the Administrator of TSA both airport "screening operations" and "law enforcement powers." 49 U.S.C. § 114(e) & (p). As Defendants correctly note, TSA screeners are not authorized to perform "law enforcement activities." [*See* Doc. # 15, pp. 7-12]; 49 U.S.C. § 114(p). Rather, duties of that type are separately delegated to "law enforcement officer[s]" under 49 U.S.C. § 114(p). They also have different job qualifications and responsibilities. *See* 49 U.S.C. § 44935. For example, Congress required the TSA to deploy or authorize "law enforcement personnel authorized to carry firearms at each airport security screening location to ensure passenger safety and national security." 49 U.S.C. § 44901(h)(1) (emphasis added). Similarly, the TSA is authorized by § 114(p) to designate an individual as a "law enforcement officer," with responsibilities that include carrying firearms, making arrests, and executing warrants. These functions not fulfilled by screeners at the Orlando and Denver airports, and are typically fulfilled by police officers. Additionally, the TSA's job description for a screener provides that the position "is not a law enforcement position." [Doc. # 15, Ex. 3]. The fact that Congress distinguished between screening and law enforcement functions when delegating authority to the Administrator of TSA supports my conclusion that TSA screeners are not "investigative or law enforcement officers" within the meaning of § 2680(h). And, TSA itself does not consider the position of "Transportation Security Officers (Screener)" to be a law enforcement position. [*See* Doc. # 15, Ex. 3 & Doc. # 21, Ex. 1 (providing that "[t]his position is not a law enforcement position")]. I note also that screeners must call law enforcement officers to search, seize, and arrest individuals if illegal items are found. [*See, id.*] Screeners also do not

12

have the authority to seize items that are prohibited.  [*Id.*]  When  a prohibited item is found, the

screener gives the passenger the option of disposing of the item, leaving the item with someone,

taking the item back to their vehicle, mailing the item home, or abandoning the item.

Regarding whether screeners can conduct searches, first I note that TSA screeners

perform limited, consensual searches that are administrative in nature.  *See* 49 U.S.C. § 44901

(requiring the screening of all passengers and property); 49 U.S.C. § 44902 (requiring passengers

to consent to a search to establish whether a passenger is carrying, or the property of a passenger

contains, a dangerous weapon, explosive, or other destructive substance); 49 C.F.R. § 1540.107

(requiring submission to screening and inspection of persons and property).  *See also, Welch v.*

*Huntleigh USA Corp.*, No. 04-663 KI, 2005 WL 1864296, at *5 (D. Or. Aug. 4, 2005) ("[TSA]

screeners are able to conduct consensual administrative searches for items which are prohibited

entry into the airport's sterile areas.  Screeners do not have the authority to detain individuals

and must call law enforcement officers to search, seize, and arrest individuals if illegal items are

found.").

Second, when considered within the broader context of the "law enforcement" proviso,

the phrase "to execute searches" does not contemplate the types of searches performed by TSA

screeners.  Contrasting the powers of screeners with that of typical investigative or law

enforcement officers illustrates the point.  For purposes of the "law enforcement" proviso,

Congress chose to define "investigative or law enforcement officer," to include officers that

perform any one of the three functions: the execution of searches, the seizure of evidence, or the

making of arrests.  28 U.S.C. § 2680(h).  Each of these functions are commonly understood to be

traditional law enforcement functions.  Such functions are commonly performed by FBI agents,

Bureau of Prison Officers, postal inspectors, and INS agents, all of which have broad investigative and law enforcement powers, and have been found to fall within the law enforcement proviso. *See, e.g., Crow v. United States*, 659 F. Supp. 556 (D. Kan. 1987) (finding postal inspectors liable because their actions fall under "law enforcement" proviso because they were authorized to search, serve warrants, and make arrests); *Medina v. United States*, 259 F.3d 220, 224 (4th Cir. 2001) (*citing* 8 U.S.C. § 1357, and providing that INS agents have broad power to search and arrest without a warrant). These traditional investigative or law enforcement officers have broad search, seizure, and/or arrest powers that they may exercise in a variety of circumstances. In contrast, the TSA screener's power is limited to pre-boarding inspections for certain prohibited items. *See United States v. McCarty*, 648 F.3d 820, 831 (9th Cir. 2011) ("[O]nce a[n] [airport] search is conducted for a criminal investigatory purpose, it can no longer be justified under an administrative search rationale . . . [T]he constitutional bounds of an airport administrative search require that the individual screener's actions be no more intrusive than necessary to determine the existence or absence of explosives that could result in harm to the passengers and aircraft.") (citation omitted). "Therefore, it would be unreasonable to interpret 'to execute searches' to include the TSA screener's performance of narrowly focused, consensual searches that are administrative in nature, when considered in light of the other traditional law enforcement functions (i.e. seizure of evidence and arrest) that Congress chose to define 'investigative or law enforcement officers.'" *Weinraub v. United States,* 927 F. Supp. 2d 258, 262-63 (E.D. N.C. 2012) (internal citations omitted); *see also Welch*, 2005 WL 1864296, at *5 (concluding that screeners were not law enforcement officers because they could only

perform consensual searches and could not seize evidence or make arrests) (*citing Wilson v. United States*, 959 F.2d 12, 15 (2d Cir. 1992).

Third, I note out that while TSA screeners do check passengers and their bags for items, such as explosives, that are contraband under federal law, screeners are primarily looking for items-such as knives, lighters, or liquids-all of which are prohibited on airplanes, but not illegal to possess.  If a screener does find something that is illegal to possess under law, such as illegal drugs, the screener is not authorized to arrest the person or seize the item, but instead must call a police officer to do so.  *See Welch*, 2005 WL 1864296, at *5.  I hold that TSA screeners are not "empowered by law to execute searches . . . for violations of Federal law" within the meaning of § 2680(h).  Similarly, in *Dry v. United States*, the Tenth Circuit held that tribal law enforcement officers were not law enforcement officers when they enforced tribal law against their members because no specific provision of the Indian Law Enforcement Act established that they had law enforcement powers.  235 F.3d at 1257; s*ee also Wilson*, 959 F.2d at 15 ("Because the power to seize evidence depends on the consent of the person from whom the evidence is to be taken, however, parole officers lack the seizure power contemplated by section 2680(h), and thus cannot be considered law enforcement personnel."); *Trujillo v. United States*, 313 F. Supp. 2d 1146, 1150 (D. N.M. 2003) (holding that "the mere existence of a Public Law 93-638 contract between [a federal agency] and a tribe for the provision of law enforcement services automatically confers federal law enforcement authority upon the officers in tribal policy departments."); *United States v. Rubin*, 573 F. Supp. 1123, 1125 (D. Colo. 1983) ("nothing in the relevant statutes [ ] suggest[s] that Justice Department Attorneys or U.S. Attorneys are

15

empowered to execute searches, to seize evidence or to make arrests for violations of federal law.").

Fourth, the conclusion that TSA screeners do not fall within the law enforcement proviso has been reached by other courts. For example, the court in *Weinraub v. United States,* 927 F. Supp. 2d at 262-63 held that TSA screeners did not fall under the law enforcement proviso because Congress's intent that they were not was made clear when contrasted with traditional law enforcement officers. *Id.* This reasoning, which I find persuasive, was also adopted by the court in *Corbett v. Transp. Sec. Admin*., No. 12-20863-CV, 2012 WL 8963931, at *9-10 (S.D. Fla. Nov. 16, 2012), and accords with the results in several other cases. *See, e.g., Coulter v. U.S. Dep't of Homeland Sec.*, CIVA 07-4894(JAG), 2008 WL 4416454, at *7-9 (D. N.J. Sept. 24, 2008); *Welch v. Huntleigh USA Corp.*, 04-663 KI, 2005 WL 1864296, at * 5 (D. Or. Aug. 4, 2005).

Plaintiff correctly notes in his response (Doc. # 20), that one case, *Pellegrino v. U.S. Transp. Sec. Admin* ., 855 F. Supp. 2d 343 (E.D. Pa. 2012), reached the opposite result. But I do not find its reasoning persuasive. In particular, in ruling that TSA screeners conduct searches within the meaning of the "law enforcement" proviso, the *Pellegrino* court relied on the Third Circuit's holding that airport security searches are administrative searches subject to the Fourth Amendment. *See id.* at 356-57 (*citing United States v. Hartwell*, 436 F.3d 174, 177 (3d Cir. 2006)). But in context, the meaning of "empowered by law to execute searches . . . for violations of Federal law" under § 2680(h) is narrower than the meaning of a "search" under the Fourth Amendment – that is, just because something is an administrative search under the Fourth Amendment, it does not mean the person doing the search is a law enforcement officer under §

16

2680(h).  After all, the seizure of property by parole officers in *Wilson* would also fall under the Fourth Amendment, but the Second Circuit still held that parole officers fall outside the "law enforcement" proviso because such seizures require consent.  959 F.2d at 15.  Additionally, the court in *Pellegrino* failed to distinguish between the broad power to execute warrantless searches possessed by other officers found to fall within the "law enforcement" proviso (as I discussed above), and the narrowly focused, administrative searches conducted by TSA screeners.

Fifth, the Fifth Circuit in *Solomon v. United States*, 559 F.2d 309 (5th Cir. 1977) provided a persuasive overview of the legislative intent behind § 2680(h):

> A review of the legislative history reveals that Congress, in response to "no-knock" raids conducted by federal narcotic agents on the wrong dwellings, passed the 1974 amendment to the Federal Tort Claims Act to provide compensation for such victims.  S.Rep.No. 588, 93rd Cong., 2d Sess., reprinted in (1974) U.S.Code Cong. & Admin.News, pp. 2789, 2790-91.  Congress intended to waive sovereign immunity for the torts of false arrest and false imprisonment only in limited circumstances.  The federal government deprived itself "of the defense of sovereign immunity in cases in which Federal law enforcement agents (or investigative officers), acting within the scope of their employment, or under color of Federal law, commit (committed) . . . false imprisonment, false arrest."

559 F.2d at 310.  The FTCA's legislative history indicates that the investigative or law enforcement official exception was not intended to apply to airport security screeners.  *Compare Solomon*, 559 F.2d at 310 (holding that security employees of military exchange were not investigative or law enforcement officers as defined under 2680(h)) *and Wilson*, 959 F.2d at 15 (holding that parole officers do not fit within the 2680(h) exception because they do not have the power to make arrests and can only perform searches or seize evidence with the parolee's consent) *with Eyo v. United States*, No. 06-6185, 2007 WL 4277511, at *4-5 (D. N.J. Nov. 29, 2007) (holding that postal inspectors constitute investigative or law enforcement officers within

the purview of 2680(h) because they have the power to make arrests and seize evidence in certain instances).  Indeed, the Third Circuit has held that "employees of administrative agencies, no matter what investigative conduct they are involved in, do not come within the § 2680(h) exception." *Matsko v. United States*, 372 F.3d 556, 560 (3d Cir. 2004) (holding that Mine Safety and Health Administration inspector was not an investigative or law enforcement official within the meaning of § 2680(h)).

Finally, to the extent that there is uncertainty about whether Congress intended to encompass TSA screeners within the "law enforcement" proviso, the uncertainty must be resolved against the waiver of sovereign immunity.  *See Trentadue v. United States*, 397 F.3d 840, 852 (10th Cir. 2005) ("Because the FTCA constitutes a waiver of the government's sovereign immunity, the notice requirements established by the FTCA must be strictly construed. The requirements are jurisdictional and cannot be waived."); *see also Cortez*, 585 F. Supp. 2d at 1285 (stating that "[w]aivers of immunity must be strictly construed in favor of the sovereign and not enlarged beyond what the language requires.") (internal quotations omitted).  If Congress means to permit lawsuits arising from the TSA's millions of daily screenings, *see* H. Res. No. 156, 113th Cong. (2013), it must do so in a clearer fashion.

As other district courts have concluded, and I agree, TSA screeners are not "investigative or law enforcement officer[s]" within the meaning of § 2680(h).  That is so because they are not "empowered by law" to perform any of the qualifying functions, that is, "to execute searches, to seize evidence, or to make arrests for violations of Federal law."  *See* 28 U.S.C. § 2680(h). Accordingly, the "law enforcement" proviso to the intentional torts exception does not apply to

TSA screeners, and Plaintiff's claims for false arrest, assault, battery, and false imprisonment are barred by sovereign immunity.

### b.   Plaintiff's Claims for Negligence and Negligent Infliction of Emotional Distress

The United States and TSA also contend that Plaintiff has failed to state a negligence claim.

The FTCA's intentional tort exception is broad and bars "[a]ny claim arising out of" an intentional tort. 28 U.S.C § 2680(h). A plaintiff may not simply recast an intentional tort claim as one for simple negligence to circumvent the bar of § 2680(h). *United States v. Shearer*, 473 U.S. 52, 55, 105 S.Ct. 3039, 3041-42, 87 L.Ed.2d 38 (1985) ("Section 2680(h) does not merely bar claims for assault or battery; in sweeping language it excludes any claim arising out of assault or battery. We read this provision to cover claims like respondent's that sound in negligence but stem from a batter committed by a Government employee,")

Here, with regards to Plaintiff's negligence claims, Plaintiff alleges only that the "action and/or omissions of the Defendants . . . was negligent and a cause of injuries, damages and losses to the Plaintiff." [Doc. # 13 ¶ 51]. Plaintiff failed to set forth the elements of either a negligence claim or a claim for negligent infliction of emotional distress, and also failed to provide any factual allegations in the complaint with regards to those claims that are in any way distinct from those that support Plaintiff's claims for intentional torts. Thus, Plaintiff's negligence claims against the United States under the FTCA are also barred because they essentially restate the intentional tort claims.

Under Tenth Circuit precedent, the alleged intentional torts here did not stem from an independent duty. "[Plaintiff] cannot avoid the reach of § 2680(h) by framing h[is] complaint in terms of negligent failure to prevent the assault and battery.  Section 2680(h) does not merely bar claims for assault or battery; in sweeping language it excludes any claim arising out of assault or battery.  [T]his provision [is read] to cover claims like [Plaintiff's] that sound in negligence but stem from a battery committed by a Government employee." *Olsen*, 144 Fed. Appx. At 732 (*quoting Shearer*, 473 U.S. at 55 (plurality opinion of Burger, C.J.)).  Plaintiff's negligence claims are based on the same factual allegations as the intentional tort claims and "aris[e] . . . out of" the Plaintiff's previously barred intentional tort claims.  They are, therefore, barred.  *See Guccione v. United States*, 847 F.2d 1031, 1034 (2d Cir. 1988) (noting that the Second Circuit, and other circuits, have adopted the view that "in the context of mixed claims of negligent and intentional conduct," § 2680(h) operated as a total bar to suit).

Accordingly, I conclude that Plaintiff has failed to state a claim for negligence and negligent infliction of emotional distress, or alternatively, that any claims for negligence "arise out of" his intentional tort claims and, thus, are barred by the plain language of § 2680(h).

### c.     Plaintiff's Claims for Unlawful Search, Unlawful Invasion of Privacy, and Intentional Infliction of Emotional Distress

Defendants also contend that Plaintiff's claims for unlawful search, unlawful invasion of privacy, and intentional infliction of emotional distress should be dismissed.

As discussed above, the exceptions in the FTCA are not limited to the torts specifically named therein, but rather encompass situations where the underlying governmental conduct which constitutes an excepted cause of action is essential to plaintiff's claim.  *See Olsen v. U.S.*

*ex rel. Dep't of the Army*, 144 Fed. Appx. 727 (10th Cir. 2005); *see also O'Ferrell v. United States*, 253 F.3d 1257 (11th Cir. 2001) (*quoting Metz v. United States*, 788 F.2d 1528, 1534 (11th Cir. 1986)).  In line with the foregoing, I conclude that Plaintiff's intentional tort claims for unlawful search, unlawful invasion of privacy, and intentional infliction of emotional distress are also barred by sovereign immunity.  In line with *Weinraub*, *Coulter*, and *Welch*,  I conclude that TSA agents are not "investigative or law enforcement officers" for purposes of Section 2680(h), and as such, the FCTA does not waive sovereign immunity with respect to intentional tort claims challenging the conduct of TSA agents.  Moreover, I conclude that Plaintiff's unlawful search, invasion of privacy, and intentional infliction of emotional distress claims are derivative of his assault and battery claims – i.e., they hinge on the same underlying governmental conduct – and are therefore also precluded by Section 2680(h).  *Olsen*, 144 Fed. Appx. at 727.

Accordingly, I lack jurisdiction over Plaintiff's torts claims against the United States and TSA pursuant to the FTCA.

**B.**     **Plaintiff's Fourth Amendment Claims Against the United States & TSA**

Defendants contend that Plaintiff's Fourth Amendment claims against the United States and TSA are also barred by sovereign immunity, and thus should also be dismissed.  To the extent that Plaintiff alleges a Fourth Amendment claim against the United States and TSA for damages, I agree.  *See Correctional Services Corp. v. Malesko*, 534 U.S. 61, 72 (2001) (holding that Congress has not created a waiver of sovereign immunity to allow a constitutional claim for money damages against the United States or an agency); *FDIC v. Meyer*, 510 U.S. 741, 486 (1994) (same as to federal agencies).

C.      **Plaintiff's Non-FTCA Claims Against the Individual Defendants**

Although the United States and TSA do not represent the Individual Defendants, I have

the inherent power to dismiss claims that are frivolous.  *See Mallard v. United States Dist. Court*,

490 U.S. 296, 307-08, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989); *see also Clinton v. Jones*, 520

U.S. 681, 708, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) (frivolous and vexatious litigation is

often terminated by a motion to dismiss or summary judgment with sanctions as a deterrent);

*Williams v. Madden*, 9 Fed.Appx. 996, 997 (10th Cir. 2001) (unpublished) (affirming the district

court's dismissal of a complaint as frivolous because it was "virtually identical" to three

previously dismissed complaints); *Fitzgerald v. First E. Seventh Str. Tenants Corp.*, 221 F.3d

362, 363 (2d Cir. 2000) (per curiam) (affirming the district court's sua sponte dismissal of a

complaint as frivolous because it merely reasserted claims that had previously been dismissed as

frivolous); *Holloway v. Hornsby*, 23 F.3d 944, 945 (5th Cir. 1994) (affirming the district court's

dismissal of a complaint as frivolous based on the litigant's history of filing frivolous

complaints).

A claim is frivolous if it "lacks an arguable basis either in law or fact."  *Neitzke v.

Williams*, 490 U.S. 319, 325 (1989).  A legally frivolous claim is one in which the plaintiff

asserts the violation of a legal interest that clearly does not exist or asserts facts that do not

support an arguable claim.  *Id.* at 324.  A legally frivolous claim rests on "an indisputably

meritless legal theory," such as a claim that a non-existent legal interest has been infringed.  *Id.*

at 327.

To the extent that Plaintiff claims that the Individual Defendant's violated Plaintiff's

Fourth Amendment rights by engaging in a warrantless search and seizure without probable

cause, his claim is legally frivolous.  Contrary to the Amended Complaint's allegations (*see* Doc. # 13), searches by TSA screeners are reasonable as administrative searches under the Fourth Amendment, and as such, neither probable cause nor a warrant is required for them to be permissible.  *See Hartwell*, 436 F.3d at 177-81; *United States v. Aukai,* 497 F.3d 955, 960 (9th Cir. 2007) (en banc).  These claims cannot survive.

Plaintiff claims the Individual Defendants are acting under the color of the law.  So, to be thorough I will engage in further *Bivens* and qualified immunity analysis.  Pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.E.2d 619 (1971), federal officials acting under color of federal law may be sued in their individual capacities for violation an individual's constitutional rights.  *Id.* at 397; *Dry v. United States*, 235 F.3d 1249, 1257 (10th Cir. 2000).  To state a claim for relief in accordance with *Bivens*, a Plaintiff must allege that a federal agent, by act or omission under color of federal authority, deprived him of a right, privilege, or immunity secured by the United States Constitution.  *See, e.g. Dry*, 235 F.3d at 1257

Under certain circumstances, public officers are entitled to qualified immunity from liability in *Bivens* suits.  *See Johnson v. Fankell*, 520 U.S. 911, 914, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997).  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Assessing whether a government official is entitled to qualified immunity involves determination of (1) whether the facts that a plaintiff has alleged or shown establish the violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The relevant inquiry in evaluating whether a right is "clearly established" is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* at 202, 121 S.Ct. 2151. In the Tenth Circuit, "for a right to be clearly established, 'there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Cortez v. McCauley*, 478 F.3d 1108, 1114-15 (10th Cir. 2007) (en banc) (*quoting Medina v. City of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)). While *Saucier's* two-step sequence for analyzing qualified-immunity defenses is often appropriate, it is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. "There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Id*. at 237.

Plaintiff's civil-rights claims are predicated on alleged violations of the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Under the Fourth Amendment, searches "conducted without a warrant issued upon probable cause [are]

per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (internal quotation marks omitted).  One exception to the warrant/probable-cause requirement has been established for administrative searches.  *See New York v. Burger*, 482 U.S. 691, 702, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987); *United States v. Biswell*, 406 U.S. 311, 315, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972).   These searches are permissible without a warrant when: (1) a substantial government interest informs the regulatory scheme under which the search is made; (2) the search is necessary to further the regulatory scheme; and (3) the governing statute's inspection program is a "constitutionally adequate substitute for a warrant."  *Burger*, 482 U.S. at 702–04, 107 S.Ct. 2636. The constitutionality of administrative searches is not dependent upon the consent of the person being searched.  *See Biswell*, 406 U.S. at 315, 92 S.Ct. 1593.

"[A]irport screening searches . . . are constitutionally reasonable administrative searches because they are 'conducted as part of a general regulatory scheme in furtherance of an administrative purpose, namely, to prevent the carrying of weapons or explosives aboard aircraft, and thereby to prevent hijackings.'" *United States v. Aukai*, 497 F.3d 955, 960 (9th Cir. 2007) (*quoting United States v. Davis*, 482 F.2d 893, 908 (9th Cir. 1973)); *accord United States v. Hartwell*, 436 F.3d 174, 179-81 (3d Cir. 2006) (holding airport searches "permissible under the administrative search doctrine because the State has an overwhelming interest in preserving air travel safety, and the procedure is tailored to advance that interest while proving to be only minimally invasive"); *see also City of Indianapolis v. Edmond*, 531 U.S. 32, 47-48, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000) (acknowledging the "validity of . . . searches at places like airports"); *Chandler v. Miller*, 520 U.S. 305, 323, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997)

(noting that "searches now routine at airports" are reasonable).

An airport security screening search is reasonable as long as it "is no more extensive nor intensive than necessary, in the light of current technology, to detect the presence of weapons or explosives" and it is "confined in good faith to that purpose." *Aukai*, 497 F.3d at 962 *(quoting Davis*, 482 F.2d at 913). Once a traveler presents himself for screening at an airport security checkpoint, he may not avoid being searched by retreating and attempting to leave. *United States v. Herzbrun*, 723 F.2d 773, 776 (11th Cir. 1984) (*citing United States v. Skipwith*, 482 F.2d 1272 (5th Cir. 1973)). "Such an option would constitute a one-way street for the benefit of a party planning airport mischief, since there is no guarantee that if he were allowed to leave he might not return and be more successful." *Id.* (*quoting Skipwith*, 482 F.2d at 1281 (Aldrich, J., dissenting)). Furthermore, agents may briefly detain a traveler for purposes of completing a security search. *See Aukai*, 497 F.3d at 962-63 (finding eighteen-minute detention reasonable, "because it was not prolonged beyond the time reasonably required to rule out the presence of weapons or explosives"). As long as (1) the screening is undertaken pursuant to a legitimate administrative search scheme; (2) the searcher's actions are cabined to the scope of the permissible administrative search; and (3) there is no impermissible programmatic secondary motive for the search, then the development of a second, subjective motive on the part of the individual searcher is irrelevant for purposes of Fourth Amendment analysis. *United States v. McCarty*, 648 F.3d 820, 834-35 (9th Cir. 2011) (thus upholding as reasonable airport screener's inspection of passenger's photos).

Consistent with the foregoing, I conclude that the Individual Defendants are entitled to qualified immunity on all claims asserted against them. Even assuming without finding that

Plaintiff's detention and search somehow violated his Fourth Amendment rights, I cannot conclude on the facts alleged that the rights at issue were clearly established. I conclude that it would not be clear to an officer in Individual Defendants' positions that detaining Plaintiff and inspecting his belongings would be unconstitutional. They could reasonably have concluded that (A) Plaintiff presented himself for screening at the security checkpoint and thus submitted to an administrative search of his belongings, *see Burger*, 482 U.S. at 702, 107 S.Ct. 2636; *Biswell*, 406 U.S. at 315, 92 S.Ct. 1593; *Herzbrun*, 723 F.2d at 776; *Beary*, 498 F.3d at 1239; *cf. Aukai*, 497 F.3d at 960; *Hartwell*, 436 F.3d at 179–81, (B) TSA could lawfully search through Plaintiff's belongings including his foot cast, *cf. Aukai*, 497 F.3d at 962; *McCarty*, 648 F.3d at 825, 838, and (C) TSA agents could detain Plaintiff while completing their inspection, *cf. Aukai*, 497 F.3d at 962-63; *Herzbrun*, 723 F.2d at 776. During all relevant times, the Individual Defendants detained Plaintiff while the administrative search was conducted and allowed him to leave the checkpoint once the search was complete.

Accordingly, Plaintiff's claims against the Individual Defendants are dismissed

**D.**   **Plaintiff's Remaining Claims**

Lastly, I note that Plaintiff withdrew his APA claims in his Response Brief in Opposition to Defendants' Motion to Dismiss, and as such, these claims will not be addressed. [*See* Doc. # 20, n.1]. Additionally, as discussed in the Facts section above, Plaintiff alleges that he was harassed on at least two other occasions but does not provide any relevant factual allegations. Thus these claims will also be dismissed.

## IV.  CONCLUSION

For the reasons given above, Defendants' Motion to Dismiss **[Doc # 15]** is GRANTED,

and Plaintiff's claims are DISMISSED WITH PREJUDICE, with costs awarded to Defendants.

Date: February___28___, 2014 in Denver, Colorado.

BY THE COURT:

___s/Lewis T. Babcock_____
LEWIS T. BABCOCK, JUDGE

28